**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| HIGH SCHOOLERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SILAS WILSON,<br><br>Defendant. | Civil Action No.<br><br>[JURY TRIAL DEMANDED] |

## COMPLAINT

Plaintiff High Schoolers, LLC ("Plaintiff") by and through its undersigned attorneys brings this Complaint against Defendant, Silas Wilson ("Defendant") and alleges as follows:

1. Plaintiff brings this action for trademark infringement, unfair competition, breach of contract, and other relief arising under the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the statutes and common law of the State of Georgia.

2. This case arises out of Defendant's improper, willful, unauthorized, and illegal use of the nearly identical OVRKAST mark and breach of his prior agreement to cease use of the same.

## PARTIES

3. Plaintiff High Schoolers, LLC is a limited liability company organized under the laws of Delaware with a principal address of 152 West 57th Street, New York, New York 10019.

4. Defendant Silas Wilson is an individual with an address of 6080 Myrtle Ave., Apt. 2I, Ridgewood, New York 11385.

## JURISDICTION AND VENUE

5. This action arises under the Acts of Congress under the Lanham Act, Title 15 U.S.C. § 1051, *et seq*., and Georgia state and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 because this action involves federal questions of law.

6. This Court has supplemental jurisdiction over the claims brought under state and common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

7. This Court has personal jurisdiction over Defendant Silas Wilson because: (a) he does business in this judicial district; (b) Plaintiff's claims are related to Defendant's contacts with this judicial district; (c) Defendant has intentionally interacted with individuals, governmental entities and organizations in this judicial district; (d) Defendant consented to personal jurisdiction in the State and Federal Courts of Georgia pursuant to the Settlement Agreement further discussed below;

and (e) Defendant has purposefully availed himself of the privilege of conducting business activities within the State of Georgia and in this judicial district.

8. Specifically, Defendant has knowingly and intentionally directed business activities and conducted business within the State of Georgia and this judicial district through the promotion and performance of live musical events and the sale of tickets to such events to consumers in this District. By way of example but not limitation, on July 10, 2025, Defendant performed at The Masquerade in Atlanta, Georgia: https://www.masqueradeatlanta.com/events/saba-3/. Attached hereto as **Exhibit A** is a screenshot of the event listing.

9. Upon information and belief, Defendant has sold physical merchandise goods at live musical events in Georgia in the past, including, but not limited to, at the July 10, 2025 event at The Masquerade.

10. Defendant also advertises, offers for sale, and sells musical recording and related audiovisual goods to consumers in the State of Georgia and in this District through online channels, including streaming platforms such as YouTube, Spotify, Apple Music and his Bandcamp website: https://itsovrkast.bandcamp.com/.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because: (a) the Defendant consented to the venue of State and Federal Courts of Georgia in the Settlement Agreement discussed below; (b) Defendant is subject to this judicial district's personal jurisdiction with respect to this action; (c) Plaintiff's

claims arise in this judicial district as a result of Defendant conducting business within this judicial district; (d) each party does business in this judicial district; (e) certain acts complained of herein have taken place in this judicial district; and (f) Defendant is subject to this judicial district's personal jurisdiction with respect to this action.

12. Pursuant to LR 3.1(B) (3) of the U.S. District Court for the Northern District of Georgia, venue is proper in this Division because a substantial part of the events giving rise to the claims asserted herein occurred in this Division.

13. Plaintiff has standing to bring this action pursuant to 15 U.S.C. § 1125(a).

## FACTS COMMON TO ALL COUNTS

### Plaintiff's Business and Intellectual Property

14. Plaintiff High Schoolers, LLC is the trademark holding company of the internationally famous hip-hop duo OUTKAST and was established by and solely controlled by the two members of OUTKAST, rappers Antwan Patton (p/k/a Big Boi) and André Benjamin (p/k/a André 3000).

15. The duo has used the name OUTKAST (the "OUTKAST Mark") to identify itself consistently since it was formed in 1993.

16. The OUTKAST Mark is inherently distinctive for Plaintiff's goods and services.

17. OUTKAST is one of the most popular and well-known musical duos in the United States and around the world. Throughout their history beginning in 1993, OUTKAST has received six Grammy Awards and has sold over 25 million records. OUTKAST has garnered widespread critical acclaim, with publications such as Rolling Stone and Pitchfork Media listing their albums among the best of their era. OUTKAST has performed live in major venues throughout the United States as well as at major music festivals throughout the world. OUTKAST also has a substantial social media following, including over 2,500,000 million followers on Facebook, over 1,000,000 followers on Instagram and over 207,000 followers on X.

18. OUTKAST is widely regarded as one of the greatest and most influential hip hop acts of all time and helped to popularize Southern hip hop. As a result of OUTKAST's longstanding success, cultural significance, and commercial recognition, the OUTKAST Mark has become famous, and is uniquely associated in the minds of consumers with the Plaintiff.

19. Since its formation, OUTKAST has achieved widespread commercial success and cultural recognition as one of the most influential groups in hip-hop. OUTKAST has performed at numerous prominent venues and events, including the Apollo Theater in 1996, on nationally televised programs such as Saturday Night Live ("SNL") in 2002, and in Atlanta during its 20th anniversary reunion concert series in 2014. OUTKAST's music and performances have continued to receive

significant public and media attention for decades. For example, in November 2025, OUTKAST was inducted into the Rock & Roll Hall of Fame.

20. Plaintiff also began selling and distributing merchandise bearing or otherwise associated with the OUTKAST Mark at around the time of their 1993 debut. This merchandise, which prominently features the OUTKAST Mark, serves as a source identifier for Plaintiff as well as Plaintiff's music and live performances. This merchandise includes, but is not limited to, clothing goods (such as t-shirts, hats, and sweatshirts), prints, posters, and bottles. Examples of authorized merchandise depicting the OUTKAST Mark are depicted below:











21. Based on Plaintiff's extensive and continuous use of the OUTKAST Mark in connection with its goods and services since 1993, Plaintiff's OUTKAST Mark is famous, extremely valuable, and continues to be widely recognized among the relevant consuming public as a designator of origin with respect to Plaintiff's goods and services.

22. As a result of all of the foregoing, Plaintiff has common law rights in and to the OUTKAST Mark dating back to at least as early as 1993.

23. Based on Plaintiff's extensive and continuous use of the OUTKAST mark as a trademark and service mark for more than thirty years, as well as the significant accolades OUTKAST and their albums and songs have received over the last three decades, the OUTKAST mark has become, and is still, famous.

24. In addition to its common law rights in the OUTKAST Mark, Plaintiff is the owner of all right, title, and interest in and to the United States Trademark and Service Mark Registrations for the OUTKAST Mark, all of which are presently valid and subsisting in law (collectively, the "Plaintiff's Registrations"). Registration Nos. 2,597,623, 2,731,201, and 4,339,716 are also incontestable in accordance with 15 U.S.C. § 1065:

- OUTKAST, Registration No. 2,597,623 in Class 9 for *series of musical sound recordings and prerecorded videotapes and videodiscs featuring music*

- OUTKAST, Registration No. 2,731,201 in Class 25 for *Clothing for men, women and children, namely, shorts, shirts, t-shirts, tank tops, sweatshirts, sweatpants, caps, hats, footwear*

- OUTKAST, Registration No. 4,339,716 in Class 41 for *entertainment services, namely, providing a web site featuring non-downloadable musical performances, musical videos, related film clips, photographs, video recordings, audio recordings, and other multimedia materials featuring music, video, television or film, and personal information regarding an actor, actors or musical performer or group and their live and recorded performances; entertainment services, namely, providing non-downloadable prerecorded music*

- , Registration No. 6,974,477 in Class 9 for *series of musical sound recordings; series of musical video recordings; downloadable music video recordings featuring music and entertainment; audiovisual recordings featuring music and entertainment; downloadable audiovisual recordings featuring music and entertainment*

- , Registration No. 6,974,478 in Class 25 for *clothing, namely, t-shirts, shirts, baseball hats, headwear, sweatshirts, hooded sweatshirts, hooded shirts, socks, shoes, jackets, swimwear, flip flops, sweaters*

25. Printouts from the United States Patent and Trademark Office's ("USPTO") online database of Plaintiff's Registrations and status and title information from the USPTO's Trademark Status & Document Retrieval system ("TSDR") are attached hereto as **Exhibit B**.

26. Plaintiff is also the owner of all right, title, and interest in and to the following United States Trademark and Service Mark Applications for the OUTKAST Mark ("Plaintiff's Applications" and, together with Plaintiff's Registrations, "Plaintiff's Registrations and Applications"):

- OUTKAST, Serial No. 98/288,272, a pending Application in Class 41 for *Entertainment services in the nature of the production of motion pictures, television programs, video recordings and audio recordings; producing records and music video recordings for others; entertainment services, namely, visual and audio performances in the nature of television, theatrical and other acting performances; entertainment, namely, live music concerts; record master production; film and music production; audio recording and production; entertainment services, namely, producing musical audio and video recordings; music publishing services*

- , Serial No. 97/390,971, a pending Application in Class 16 for *printed posters*

- , Serial No. 97/391,086, a pending Application in Class 25 for *Clothing, namely, jerseys, shorts, sweatpants, tank tops, long sleeve shirts, and sleepwear; athletic apparel, namely, shirts, pants, hats and caps*

27. Printouts from the USPTO's online database of Plaintiff's Applications and status and title information from TSDR are attached hereto as **Exhibit C**.

28. Plaintiff has invested a tremendous amount of time, money and other resources advertising, promoting, and marketing its goods and services provided under its OUTKAST Mark. As a result of Plaintiff's substantial efforts, Plaintiff's OUTKAST Mark has acquired fame, substantial consumer recognition and goodwill. The OUTKAST Mark has become an important source indicator which identifies the quality goods and services sold and provided by the Plaintiff. For all of the foregoing reasons, the OUTKAST Mark is an exceedingly valuable asset of Plaintiff.

**Defendant's Acts of Infringement and Use of the OVRKAST Mark**

29. Many years after Plaintiff commenced use of the OUTKAST Mark as a trademark and service mark, many years after Plaintiff acquired common law rights in the OUTKAST Mark, many years after Plaintiff's Registrations were acquired for OUTKAST, and many years after the OUTKAST mark became famous,

Defendant began his musical career as an American rapper and record producer utilizing the name OVRKAST.

30. Upon information and belief, Defendant adopted the OVRKAST mark with knowledge of Plaintiff's rights in the famous OUTKAST mark.

31. Upon information and belief, Defendant selected the name OVRKAST to trade upon the tremendous fame and goodwill associated with Plaintiff's OUTKAST name and mark, or, at a minimum, to call to consumers' minds to Plaintiff's famous OUTKAST mark.

32. Plaintiff has not consented to or authorized Defendant's continued use of the OVRKAST mark or any variation thereof.

33. Defendant's use of the OVRKAST mark is likely to cause confusion, to cause mistake, or to deceive the public into the false belief that the services offered by Defendant come from or are otherwise sponsored by, connected with, or affiliated with Plaintiff, which they are not.

34. In fact, Defendant's use of the OVRKAST mark has already caused actual confusion amongst consumers, which will no doubt continue to occur.

35. Defendant has admitted that there has been consumer confusion, in a July 9, 2025 interview with Rolling Stone, attached hereto as **Exhibit D**. In that interview, Defendant was asked about handling increased visibility, fans, and his

fame. Although the interviewer did not reference OUTKAST in the question, Defendant responded as follows:

> "…***The worst thing I get is like, 'The nigga think he Outkast.'*** It's like, 'No, bro. I wasn't even thinking about Outkast.' ***Mad Niggas do that shit. They read Ovrkast [as] Outkast. They're like, oh my God, I thought they said Outkast.*** And it's like, it don't, so…'"

36. Defendant's very own statement confirms that consumers have read, perceived, and understood OVRKAST as OUTKAST. Defendant's continued use of the OVRKAST mark therefore will continue to cause further confusion, mistake, and deception among consumers.

37. For all of the foregoing reasons, Defendant's unauthorized use of the nearly identical OVRKAST mark has already damaged and will continue to damage Plaintiff.

38. After becoming aware of Defendant's use of the OVRKAST mark, Plaintiff undertook efforts to amicably resolve Defendant's unauthorized use of the mark.

39. Specifically, on June 18, 2025, Plaintiff, through their counsel, sent the Defendant a cease and desist letter demanding that Defendant discontinue the use of the name OVRKAST.

40. The parties, through counsel, thereafter, entered negotiations to resolve the dispute. As part of those negotiations, Defendant agreed, among other things, to permanently discontinue any and all use of the OVRKAST mark in connection with

his goods and services, including, without limitation, any use of the OVRKAST mark on Defendant's website, social media accounts, music streaming accounts, domain name, newsletters, advertising and marketing materials, clothing, merchandise, and any other media or format.

41. As part of those negotiations, Defendant also agreed to transition to a new name (that Plaintiff approved of), and to transition to a new, agreed-upon name, OVERKXST.

42. As part of those negotiations, on April 7, 2026, following several rounds of negotiations between counsel for the parties, Defendant, through his counsel, requested an extension of the agreed deadline to transition from OVRKAST to the agreed-upon name, OVERKXST, to July 15, 2026 (the "Phase Out Period"). In that communication, Defendant's counsel stated that, if Plaintiff agreed to the requested extension, the parties' negotiations would be concluded and that Plaintiff's counsel could circulate a final settlement agreement reflecting the parties' agreed-upon terms for execution.

43. Plaintiff accepted Defendant's requested modification to the Phase Out Period and, on April 10, 2026, provided Defendant with a finalized version of the Settlement Agreement for execution. Attached hereto as **Exhibit E** is the final written agreement reflecting the terms agreed upon by the parties (the "Settlement Agreement").

44. The parties therefore reached an agreement to resolve the dispute as of April 10, 2026.

45. As set forth in the relevant correspondence and in the Settlement Agreement, Defendant agreed to permanently discontinue all use of the OVRKAST mark in connection with all of his goods and services in all media and in all formats on or before July 15, 2026. Defendant further agreed that, on or before the expiration of the Phase Out Period, Defendant would transition his stage name from OVRKAST to OVERKXST.

46. Despite the parties' agreement on all material terms of the Settlement Agreement and negotiation of a full and final settlement agreement, Defendant repeatedly and unnecessarily delayed the execution of the Settlement Agreement for months. Despite Plaintiff's repeated follow up efforts, Defendant continued to delay execution and ultimately refused to execute the Settlement Agreement despite having agreed to all of its terms months earlier.

47. On July 13, 2026, just two days before the expiration of the agreed-upon Phase Out Period, Defendant requested for the first time that Plaintiff permit him to use one of two alternative names instead of the agreed upon name, OVERKXST. One of the proposed alternative names had already been rejected by Plaintiff during prior settlement negotiations, and the other was a close variation of a name Plaintiff had previously rejected.

48. Defendant provided no justification for attempting to renege on the agreed-upon settlement terms or for seeking approval of alternative marks that Plaintiff already rejected.

49. On August 5, 2026, Plaintiff sent Defendant a letter informing Defendant that the parties had agreed upon all material terms of the Settlement Agreement, that the Settlement Agreement was finalized and memorialized in writing, and that Defendant was bound by the terms of the Settlement Agreement.

50. Plaintiff further informed Defendant that his continued use of the OVRKAST mark constituted a breach of the Settlement Agreement and demanded that Defendant cure his breach by permanently ceasing all use of the OVRKAST mark no later than August 11, 2026, and confirming his compliance with the Settlement Agreement. Attached hereto as **Exhibit F** is Plaintiff's letter, informing Defendant of the breach of the Settlement Agreement.

51. Defendant did not respond to Plaintiff's August 5, 2026 letter. Even after receiving the August 5, 2026 letter, Defendant continued to use the OVRKAST mark throughout his social media. Attached hereto as **Exhibit G** are examples of Defendant's social media pages showing Defendant's continued use of the OVRKAST mark well after the expiration of the agreed-upon Phase Out Period and after receiving the August 5, 2026 letter.

52. Defendant still has not cured his breach and continues to use the OVRKAST mark.

53. Defendant's refusal to cure his breach despite notice and opportunity to cure constitutes a material breach of the Settlement Agreement.

54. Defendant continues to use the OVRKAST mark with knowledge of Plaintiff's rights in the famous OUTKAST mark, with knowledge that consumers associate OVRKAST with OUTKAST, and with knowledge that doing so is in breach of the Settlement Agreement.

55. Defendant's actions demonstrate that he knowingly, willfully, intentionally, and maliciously adopted and uses the OVRKAST mark and demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff and the Outkast Mark.

## COUNT I

## FEDERAL TRADEMARK INFRINGEMENT

56. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

57. Defendant, through the conduct described above, is providing in interstate commerce goods and services under a mark that is a colorable imitation of the marks that are the subject of Plaintiff's Registrations, which is likely to cause

confusion or mistake and/or to deceive in violation of the Lanham Act Section 32(1) (15 U.S.C. § 1114(1)).

58. Defendant has committed such acts of infringement willfully and with full knowledge of Plaintiff's prior use and registration of, and rights in and to, Plaintiff's OUTKAST mark and Plaintiff's Registrations.

59. As a result of Defendant's acts of infringement, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

60. Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114(1), 1116, and 1117.

## COUNT II

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP UNDER THE LANHAM ACT

61. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

62. Plaintiff holds valid and subsisting rights in and to the OUTKAST Mark that predate any priority date upon which Defendant can rely.

63. Due to the substantial similarities between Defendant's and Plaintiff's respective marks, as well as Defendant's use of the OVRKAST mark in connection with identical goods and services, Defendant's use of the OVRKAST mark is likely

to cause confusion, to cause mistake, or to deceive the public into the false belief that the goods and services offered by Defendant come from or are otherwise sponsored by, connected with, endorsed by, associated with, approved by, authorized by, or affiliated with Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's OUTKAST mark.

65. As a result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, serious and irreparable harm for which there is no adequate remedy at law.

66. As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III

## DILUTION UNDER THE LANHAM ACT

67. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

68. As a result of its inherent distinctiveness and widespread use and promotion throughout the United States for nearly three decades, the OUTKAST Mark is a famous mark within the meaning of Section 43(c) of the Lanham Act.

69. Plaintiff's OUTKAST Mark became famous prior to the first use of the OVRKAST mark by the Defendant.

70. Defendant has used, is using, and has caused others to use the confusingly similar OVRKAST mark without Plaintiff's authorization.

71. Upon information and belief, Defendant adopted the OVRKAST mark to try to create an association with Plaintiff or to otherwise call to mind Plaintiff, its goods and services, and its famous OUTKAST Mark.

72. Defendant's use of a mark that is nearly identical to Plaintiff's famous mark impairs the distinctiveness of Plaintiff's famous mark and causes Plaintiff's famous mark to lose its ability to serve as a unique identifier for Plaintiff as well as Plaintiff's goods and services.

73. Due to the substantial similarities between Defendant's and Plaintiff's marks, as well as Defendant's use of a mark nearly identical to Plaintiff in connection with identical goods and services, consumers and the public are likely to assume that (and in fact have previously assumed that) Defendant is connected to or affiliated with Plaintiff, which he is not.

74. Further, due to Defendant's use of a mark nearly identical to Plaintiff's mark in connection with identical goods and services, the public has been led to falsely believe that an association exists between Plaintiff and Defendant, harming the reputation of Plaintiff and Plaintiff's OUTKAST mark.

75. Defendant's conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Plaintiff and the OUTKAST Mark, to impair the distinctiveness of the OUTKAST Mark, and to deceive consumers into believing that Defendant is connected to Plaintiff, which he is not.

76. Therefore, Defendant's use of the OVRKAST mark dilutes or is likely to dilute the distinctiveness of Plaintiff's OUTKAST Mark by eroding the public's exclusive identification of the OUTKAST Mark with Plaintiff, tarnishing and degrading the positive association and prestigious connotations of the OUTKAST Mark, and otherwise lessening the capacity of the OUTKAST Mark to identify and distinguish Plaintiff's goods and services.

77. Defendant's use of the OVRKAST mark is causing and is likely to continue to cause dilution by blurring and dilution by tarnishment of Plaintiff's mark in violation of Section 2(c) of the Lanham Act, 15 U.S.C. § 1125(c).

78. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

79. As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## COUNT IV

## BREACH OF CONTRACT

80. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

81. The parties, through their respective counsel, agreed upon all material terms necessary to resolve this dispute, finalized and memorialized those terms in a written Settlement Agreement accepted by all parties, and circulated to the parties for execution, thereby creating a binding and enforceable agreement between Plaintiff and Defendant.

82. Among other obligations, Defendant agreed in the Settlement Agreement to "permanently discontinue any and all use of the [OVRKAST mark] in connection with his goods and services . . ." by July 15, 2026.

83. Plaintiff has met all of its obligations under the Settlement Agreement.

84. Defendant did not cease use of the OVRKAST mark by July 15, 2026, in breach of the Settlement Agreement.

85. Plaintiff provided Defendant with written notice of his breach and an opportunity to cure such breach in accordance with the Settlement Agreement.

86. Defendant did not cure his breach within the time period set forth in the Settlement Agreement.

87. As a result of Defendant's material breach of the Settlement Agreement, Plaintiff has been damaged and is entitled to enforce its rights and remedies under the Settlement Agreement.

88. Plaintiff is entitled to judgment declaring that Defendant breached the Settlement Agreement and requiring Defendant to specifically perform his obligations thereunder.

89. Plaintiff is also entitled to recover its damages resulting from the costs incurred in enforcing the terms of the Settlement Agreement, in an amount to be proven at trial.

## COUNT V

## TRADEMARK INFRINGEMENT UNDER GEORGIA COMMON LAW

90. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

91. Defendant is using the nearly identical OVRKAST mark in a way that is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods and services are associated or connected with Plaintiff, or has the sponsorship, endorsement, approval, or in some other way legitimately connected to Plaintiff, thereby damaging Plaintiff and its reputation.

92. Defendant's acts constitute infringement of Plaintiff's rights in its OUTKAST Mark under Georgia common law.

93. Defendant acted with knowledge of Plaintiff's use of and rights to the OUTKAST Mark without regard to the likelihood of confusion of the public created by Defendant's activities.

94. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the OUTKAST Mark, and to mislead the consuming public.

95. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

96. As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief, damages, costs, and punitive damages.

## COUNT VI

## UNFAIR COMPETITION UNDER GEORGIA COMMON LAW

97. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

98. Defendant's acts complained of herein constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of a trade or business.

99. Defendant's acts were undertaken and performed in bad faith and Defendant's unfair competition was and continues to be willful and intentional.

100. Defendant's conduct has and will continue to cause irreparable harm and damage for which there is no adequate remedy at law.

101. As a result of Defendant's conduct, Plaintiff is entitled to injunctive relief, damages, costs, and punitive damages.

## COUNT VII

## UNFAIR COMPETITION UNDER O.C.G.A. § 23-2-55

102. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

103. Defendant's aforesaid acts constitute an attempt to encroach on the business of Plaintiff with the intention of deceiving and misleading the public by using a nearly identical mark and name to that owned by and used by Plaintiff.

104. Defendant's use of the OVRKAST mark is causing, and is likely to continue causing, confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods and services are affiliated, connected, or associated with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff, when that is not the case.

105. Defendant is using the nearly identical OVRKAST mark with the intention of deceiving and misleading the public and constitutes unfair competition in violation of O.C.G.A. § 23-2-55.

106. Defendant's conduct has and will continue to damage Plaintiff.

## COUNT VIII

## DILUTION UNDER O.C.G.A. § 10-1-451(b)

107. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

108. As a result of Plaintiff's extensive promotion and use of its OUTKAST Mark, the Outkast Mark has become a famous, distinctive, and well-known source indicator for Plaintiff and of Plaintiff's goods and services.

109. Defendant's unauthorized use of the OVRKAST mark dilutes the distinctiveness of the OUTKAST Mark by lessening the uniqueness of the mark, eroding the public's exclusive identification of the mark with Plaintiff, and by

tarnishing and degrading the positive associations and prestigious connotations of the mark, in violation of O.C.G.A § 10-1-451(b).

110. As a result of Defendant's conduct, Plaintiff has suffered irreparable harm and is entitled to injunctive relief, damages, and costs.

## COUNT IX

## DECEPTIVE TRADE PRACTICES UNDER GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

111. Plaintiff repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth herein.

112. Defendant's unauthorized use of the OVRKAST mark is causing, and is likely to continue causing, confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods and services are affiliated, connected, or associated with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff, when that is not the case.

113. Defendant's aforesaid acts constitute deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq*.

114. Defendant's deceptive trade practices have damaged and will continue to damage Plaintiff and the consuming public.

## COUNT X

## ATTORNEYS' FEES AND LITIGATION COSTS

115. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

116. Defendant's aforesaid acts constitute a bad faith, willful effort to deceive and mislead the public and trade off the goodwill of the Plaintiff by knowingly using a nearly identical mark and name to that owned by and used by Plaintiff.

117. Likewise, Defendant has caused Plaintiff unnecessary trouble and expense. Even after Plaintiff provided written notice of Defendant's breach and an opportunity to cure pursuant to the Settlement Agreement, Defendant failed to cure his breach or and comply with his contractual obligations.

118. Specifically, pursuant to Section 5 of the Settlement Agreement, Plaintiff is entitled to recover all attorneys' fees and costs incurred in enforcing the Settlement Agreement.

119. Further, Defendant's failure and refusal to comply with the Settlement Agreement has caused Plaintiff unnecessary trouble and expense, entitling Plaintiff to recover all of its attorneys' fees and expenses of litigation pursuant to O.C.G.A.§ 13-6-11.

120. As a result of Defendant's bad faith conduct, and the unnecessary trouble and expense such conduct has caused Plaintiff, Plaintiff is entitled to recover the costs of this litigation, including but not limited to attorney's fees in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant as follows:

1. That the Court enter judgment against Defendant and in favor of Plaintiff;
2. That Defendant and his officers, directors, agents, employees and all those in privity or acting in concert with Defendant, and each of them, be permanently enjoined and restrained from, directly or indirectly:

   (a) Using the name and mark OVRKAST or any other marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks in connection with the provision of his goods and services;

   (b) Using in any other way any other marks or designations so similar to the aforesaid Plaintiff's OUTKAST Mark as to be likely to cause confusion, mistake, or deception;

   (c) Using any other marks, slogans, designs, or designations intended to call to mind Plaintiff and/or OUTKAST or any of OUTKAST's members or works of authorship;

(d) Falsely designating the origin, sponsorship, endorsement, or affiliation of the Defendant's goods or services in any manner;

(e) Otherwise competing unfairly with Plaintiff and/or OUTKAST in any manner;

(f) Using any trade practices whatsoever, including those complained of herein, which tend to unfairly compete with or injure Plaintiff's and/or OUTKAST's business and goodwill pertaining thereto;

(g) Using any deceptive trade practices whatsoever, including those complained of herein, which tend to falsely misrepresent Plaintiff or OUTKAST's sponsorship of, approval of, certification of, association with, connection with, or certification of Defendant's goods or services;

(h) Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

3. That the Defendant be required to pay to Plaintiff its compensatory, incidental, and consequential damages.
4. That the Defendant be required to account for and pay to Plaintiff all gains, profits, and advantages derived by him from the unlawful activities alleged herein.
5. That the Defendant be required to pay enhanced, trebled, and/or punitive damages because of the willful and unlawful acts as alleged herein.

6. That the Defendant be required to pay to Plaintiff all of its litigation expenses, including but not limited to reasonable attorneys' fees and the costs of this action.
7. That Defendant be required to deliver for destruction at Defendant's expense all promotional materials, packaging, posters, signs, advertisements, promotional flyers, cards, brochures, clothing, merchandise, and any other materials that bear the term OVRKAST together with all plates, molds, matrices, templates, files and other means and materials for making or reproducing the same.
8. That Defendant be required to remove any and all online use of the OVRKAST mark including but not limited to via any of his websites, social media accounts or otherwise, and that Defendant be required to take steps necessary to delete, disable, or remove any use of the OVRKAST mark that is associated with any of Defendant's goods or services on any third-party website or online source.
9. That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

## **Jury Demand**

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: September 16, 2026

By: /s/ Joshua M. Kalb

Joshua M. Kalb (Ga. Bar No. 142493)
BARNES & THORNBURG LLP
3340 Peachtree Rd. NE, Suite 2900
Atlanta, GA 30326-1092
Telephone: (404) 264-4031
Josh.Kalb@btlaw.com

*Counsel for High Schoolers, LLC*

*Of counsel not yet admitted (pro hac vice motion forthcoming):*

Abigail J. Remore, Esq.
Jordan Rosario, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
ajremore@csglaw.com
jrosario@csglaw.com
(973) 325-1500